UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ANTHONY G. MOORE,                  )
                                   )
            Petitioner,            )
                                   )
      v.                           )    No. 4:10CV1244 FRB
                                   )
STEVE LARKINS,[1]                  )
                                   )
            Respondent.            )


<u>**MEMORANDUM AND ORDER**</u>

This matter is before the Court on Missouri state
prisoner Anthony G. Moore's <u>pro</u> <u>se</u> petition for writ of habeas
corpus pursuant to 28 U.S.C. § 2254. All matters are pending
before the undersigned United States Magistrate Judge, with consent
of the parties, pursuant to 28 U.S.C. § 636(c).

## I. Procedural History

On August 23, 2006, a jury in the Circuit Court of the
City of St. Louis, Missouri, convicted petitioner of three counts
of Attempt to Commit Forcible Rape, three counts of Forcible
Sodomy, one count of Burglary in the First Degree, one count of
Stealing, and one count of Resisting Arrest. (Resp. Exh. C at 56-

---

[1]Petitioner is incarcerated at the Eastern Reception,
Diagnostic and Correctional Center (ERDCC) in Bonne Terre,
Missouri. Inasmuch as Terry Russell is Warden of ERDCC, he
should be substituted for Steve Larkins as proper party
respondent. Rule 2(a), Rules Governing Section 2254 Cases in the
United States District Courts. In addition, because petitioner
is challenging a sentence to be served in the future, Missouri
Attorney General Jeremiah "Jay" Nixon should be added as a party
respondent. Rule 2(b), Rules Governing Section 2254 Cases in the
United States District Courts.

64.) On November 17, 2006, petitioner was sentenced to a series of concurrent and consecutive terms of imprisonment, aggregating thirty-five years. (Id. at 83-88.) On December 18, 2007, the Missouri Court of Appeals affirmed petitioner's conviction and sentence. State v. Moore, 241 S.W.3d 422 (Mo. Ct. App. 2007) (order) (*per curiam*). Petitioner did not seek transfer to the Missouri Supreme Court. On March 20, 2008, petitioner filed a pro se Rule 29.15 motion for post-conviction relief, which was subsequently amended by appointed counsel and denied by the trial court after a hearing. (Resp. Exh. H.) On September 1, 2009, the Missouri Court of Appeals affirmed the decision of the trial court. Moore v. State, 291 S.W.3d 377 (Mo. Ct. App. 2009) (order) (*per curiam*). Mandate issued September 24, 2009. The instant petition was received by this Court on July 12, 2010, in an envelope with a postmark date of July 8, 2010. Applying the prison mailbox rule, see Henderson-El v. Maschner, 180 F.3d 984 (8th Cir. 1999), the petition was timely filed under 28 U.S.C. § 2244(d).[2]

_____

[2]Pursuant to 28 U.S.C. § 2244(d), a petitioner has one year from the date his judgment of conviction becomes final within which to file a petition for writ of habeas corpus. Where, as here, a Missouri petitioner does not seek transfer to the Missouri Supreme Court after direct appeal, his judgment becomes final upon expiration of the time within which to seek such discretionary review, that is, fifteen days after the court of appeals issues its opinion. Gonzalez v. Thaler, ___ U.S. ___, 132 S. Ct. 641 (2012); Mo. S. Ct. R. 83.02. Accordingly, petitioner's judgment of conviction here became final on January 2, 2008, fifteen days after the Missouri Court of Appeals affirmed his conviction on direct appeal. The one-year limitations period was tolled, however, during the pendency of petitioner's post-conviction proceedings, that is, from March 20,

In his petition, petitioner raises twelve claims for relief:

**Ground 1:** That trial counsel was ineffective for failing to strongly object to the victim's misidentification of petitioner in the courtroom;

**Ground 2:** That trial counsel was ineffective for failing to strongly object to a sleeping juror;

**Ground 3:** That trial counsel was ineffective for failing to investigate sources in order to impeach witnesses;

**Ground 4:** That the trial court erred in overruling petitioner's motion to dismiss improperly joined counts and/or to sever;

**Ground 5:** That trial counsel was ineffective for pursuing an argument inconsistent with his defense;

**Ground 6:** That the trial court erred in compelling the jury to reach a verdict within a certain time frame;

**Ground 7:** That trial counsel was ineffective for failing to object to statements made by the prosecutor, the introduction of hearsay statements, and statements made by the court regarding the judicial system;

**Ground 8:** That trial counsel was ineffective for failing to object to the prosecutor's closing argument;

**Ground 9:** That the trial court erred in failing to grant a mistrial because of the prosecutor's closing argument;

**Ground 10:** That the trial court erred in overruling petitioner's motion for judgment of acquittal inasmuch as there was insufficient evidence to

---

2008, through September 24, 2009. See Payne v. Kemna, 441 F.3d 570, 572 (8th Cir. 2006) (post-conviction relief proceedings final on issuance of the mandate). Totaling the seventy-eight days between January 2 and March 20, 2008; and the 287 days between September 24, 2009, and the postmark date of July 8, 2010, 365 days elapsed on the date the petition was placed in the prison mailbox, thus making the petition timely filed.

sustain petitioner's conviction on Count IX of the Information, and because the victim misidentified petitioner in court;

**Ground 11:** That petitioner's conviction of the offenses charged in Counts IX and X violated the Double Jeopardy Clause; and

**Ground 12:** That trial counsel was ineffective for failing to call petitioner as a witness at the suppression hearing and at trial, and for failing to introduce petitioner's medical records at trial.

In response, respondent contends that the claims raised in Grounds 1 through 9 of the instant petition are procedurally barred from federal habeas review inasmuch as petitioner failed to properly pursue the claims in state court. Alternatively, respondent contends that the claims are without merit and should be denied. With respect to the claims raised in Grounds 10 through 12, respondent likewise argues that the claims are without merit and should be denied.

## II. Exhaustion Analysis

A petitioner must exhaust his state law remedies before the federal court can grant relief on the merits of his claims in a habeas petition. 28 U.S.C. § 2254(b)(1); <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999). The Court must first examine whether the federal constitutional dimensions of the petitioner's claims have been fairly presented to the state court. <u>Smittie v. Lockhart</u>, 843 F.2d 295, 296 (8th Cir. 1988); <u>see also</u> <u>Boerckel</u>, 526 U.S. at 848. If not, the petitioner may still meet the exhaustion requirement if there are no currently available non-futile state remedies by which

he could present his claims to the state court. <u>Smittie</u>, 843 F.2d at 296. When the petitioner's claims are deemed exhausted because he has no available state court remedy, the federal court still cannot reach the merits of the claims unless the petitioner demonstrates adequate cause to excuse his state court default and actual prejudice resulting from the alleged unconstitutional error, or that a fundamental miscarriage of justice would occur if the Court were not to address the claims. <u>Martinez v. Ryan</u>, ___ U.S. ___, ___, 132 S. Ct. 1309, 1316 (2012); <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991); <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87 (1977); <u>Keithley v. Hopkins</u>, 43 F.3d 1216, 1217 (8th Cir. 1995); <u>Stokes v. Armontrout</u>, 893 F.2d 152, 155 (8th Cir. 1989). Before reviewing any claims raised in a habeas petition, the Court may require that every ground advanced by the petitioner survive this exhaustion analysis. <u>Rhines v. Weber</u>, 544 U.S. 269 (2005).

A review of the record shows petitioner's claims for relief to be exhausted because petitioner either properly raised the claims in state court upon which they were determined on their merits, or because petitioner has no available non-futile state remedies by which he could now pursue his claims.

### III.  Procedural Default

A.  <u>Grounds 4, 6 and 9 – Trial Court Errors</u>

In Grounds 4, 6 and 9, petitioner claims that the trial court erred by failing to dismiss improperly joined counts or to sever, by improperly instructing the jury to return a verdict

5

within a certain period, and by failing to grant a mistrial on the prosecutor's closing argument. Petitioner raised these claims in his pro se post-conviction motion. However, a review of the record shows petitioner not to have raised these claims on direct appeal.

A claim must be presented at each step of the judicial process in state court to avoid procedural default. Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994). Under Missouri law, claims of trial error must be raised on direct appeal. Ham v. State, 7 S.W.3d 433, 440 (Mo. Ct. App. 1999). Claims of trial error are not cognizable in post-conviction proceedings. Johnson v. State, 615 S.W.2d 502, 506 (Mo. Ct. App. 1981). Because the petitioner here failed to raise the instant claims of trial error on direct appeal, the claims are procedurally defaulted and cannot be reviewed by this Court unless the petitioner shows cause for his default and prejudice resulting therefrom, or that a fundamental miscarriage of justice would occur if the Court were not to address the merits of the claims. Coleman, 501 U.S. at 750. A review of the file shows petitioner to arguably contend that direct appeal counsel's failure to raise the instant claims on direct appeal constitutes cause to excuse his procedural default.

Ineffective assistance of direct appeal counsel may constitute cause for procedural default. Reese v. Delo, 94 F.3d 1177, 1182 (8th Cir. 1996) (citing Murray v. Carrier, 477 U.S. 478, 492 (1986)). For the federal court to review such a claim as cause for default, however, the petitioner must have first presented this

Sixth Amendment argument as an independent claim to the state courts if a forum existed to make the argument. <u>Edwards v. Carpenter</u>, 529 U.S. 446, 450-53 (2000); <u>Beaulieu v. Minnesota</u>, 583 F.3d 570, 575 (8th Cir. 2009); <u>Taylor v. Bowersox</u>, 329 F.3d 963, 971 (8th Cir. 2003) (citing <u>Murray</u>, 477 U.S. at 489). Although petitioner could have raised a claim of ineffective assistance of direct appeal counsel in his Rule 29.15 post-conviction motion, <u>see</u> Mo. Ann. R. 29.15(a); <u>Becker v. State</u>, 77 S.W.3d 27 (Mo. Ct. App. 2002); <u>Collins v. State</u>, 54 S.W.3d 226, 229 (Mo. Ct. App. 2001), a review of the record shows that he did not do so. Nor does the record show petitioner to have raised a claim of ineffective assistance of direct appeal counsel in any state court proceeding. As such, this Court is precluded from addressing petitioner's claim of ineffective assistance of direct appeal counsel as cause to excuse the procedural default. <u>See Taylor</u>, 311 F.3d at 963. Petitioner has asserted no other cause to excuse his default of the instant claims of error.

Petitioner has thus failed to establish cause to excuse his procedural default, thus obviating the need for the Court to determine whether prejudice has been shown. <u>Cagle v. Norris</u>, 474 F.3d 1090, 1099 (8th Cir. 2007); <u>Sherron v. Norris</u>, 69 F.3d 285, 289 (8th Cir. 1995). In addition, because petitioner has failed to present any new, reliable evidence demonstrating that he is actually innocent of the crimes of which he was convicted, he has failed to show that a constitutional violation has probably

resulted in the conviction of one who is actually innocent and thus that a fundamental miscarriage of justice would occur if the Court were not to address his defaulted claims. Schlup v. Delo, 513 U.S. 298, 316 (1995) ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."). See also Kidd v. Norman, 651 F.3d 947 (8th Cir. 2011); Weeks v. Bowersox, 119 F.3d 1342, 1352-53 (8th Cir. 1997) (*en banc*) (bare, conclusory assertion that a petitioner is actually innocent insufficient to excuse a procedural default).

Therefore, the claims raised in Grounds 4, 6 and 9 of the instant petition are procedurally barred from review and should be denied.

B.    Ground 10 - Trial Court Error, Insufficiency of the Evidence

In his tenth ground for relief, petitioner claims that the trial court erred in denying his motion for judgment of acquittal inasmuch as there was insufficient evidence to sustain a conviction for the offense of Attempted Forcible Sodomy as alleged in Count IX of the Information and because of the victim's misidentification of the petitioner in court. A review of the record shows that on direct appeal, petitioner raised a claim that the evidence was insufficient to sustain a conviction of Attempted Forcible Rape as alleged in Count X of the Information. No sufficiency of the evidence claim was raised with respect to Count

IX. Nor was a claim raised on direct appeal that the victim's purported misidentification of petitioner in court resulted in a conviction based on insufficient evidence. (Resp. Exh. A.)

For a claim to be fairly presented to state court, a habeas petitioner must assert the same factual grounds and legal theories in the state court proceeding as he asserts in his federal habeas petition. Picard v. Connor, 404 U.S. 270 (1971); Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996). Mere similarity in claims is insufficient. Abdullah, 75 F.3d at 412 (citing Duncan v. Henry, 513 U.S. 364 (1995) (per curiam)). Failure to raise the factual basis of a federal habeas claim in state court results in a procedural default of the claim. See id.

Here, petitioner claims that the evidence was insufficient to sustain a conviction of Attempted Forcible Sodomy as alleged in Count IX of the Information because no evidence presented at trial supported the factual circumstances of the alleged offense as set out in the Information. In addition, petitioner claims that the evidence was insufficient to support his conviction inasmuch as one of the victims initially failed to identify him in court as the perpetrator of the crimes. Although petitioner raised a claim challenging the sufficiency of the evidence on direct appeal, such claim was directed only to the offense of Attempted Forcible Rape as alleged in Count X of the Information. Such a factual ground is different than the grounds upon which petitioner bases the instant claim.

Inasmuch as petitioner failed to assert the same factual grounds in state court upon which he now claims insufficiency of the evidence, the instant claim is procedurally barred from review by this Court unless petitioner can show cause for his default and actual prejudice resulting therefrom, or demonstrate "that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 731-32, 750. As discussed, <u>supra</u>, any claim of ineffective assistance of direct appeal counsel cannot establish cause for petitioner's default inasmuch as petitioner failed to raise this independent Sixth Amendment claim in state court. <u>See</u> <u>Taylor</u>, 311 F.3d at 963. In addition, because petitioner has failed to present any evidence of actual innocence, he cannot satisfy the "fundamental miscarriage of justice" exception to the required showing of cause and prejudice.

Therefore, petitioner's claim challenging the sufficiency of the evidence as set out in Ground 10 of the instant petition is procedurally barred from review by this Court and should be denied.

C. <u>Grounds 1-3, 5, 7, and 8 - Ineffective Assistance of Trial Counsel</u>

In Grounds 1, 2, 3, 5, 7, and 8, petitioner contends that trial counsel was ineffective by failing to strongly object to the victim's misidentification and to a sleeping juror, failing to investigate so as to impeach witnesses, pursuing an inconsistent defense, failing to object to statements made in the presence of the jury, and failing to object to the prosecutor's closing argument. Although petitioner raised these claims in his <u>pro</u> <u>se</u>

10

motion for post-conviction relief, appointed counsel did not raise the claims in the amended motion.

Issues set forth in a <u>pro</u> <u>se</u> motion for post-conviction relief but not included in the amended motion are not considered by the post-conviction motion court. <u>Norville v. State</u>, 83 S.W.3d 112, 114 (Mo. Ct. App. 2002). Such issues are therefore procedurally defaulted and cannot be addressed by a federal habeas court in the absence of cause and prejudice, or a showing of fundamental miscarriage of justice. <u>See</u> <u>Martinez</u>, 132 S. Ct. at 1316; <u>see also</u> <u>Interiano v. Dormire</u>, 471 F.3d 854, 856-57 (8th Cir. 2006) (failure of appointed counsel to include claims from original <u>pro</u> <u>se</u> post-conviction motion results in default of the claims). As cause, petitioner asserts that post-conviction counsel was ineffective in failing to raise the instant claims of ineffective assistance of trial counsel in the amended post-conviction motion.

"Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." <u>Martinez</u>, 132 S. Ct. at 1315. For ineffective assistance of post-conviction counsel to constitute cause, petitioner must show that counsel's assistance was ineffective under the standards of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and further demonstrate that the underlying claim of ineffective assistance of trial counsel is a "substantial" one, that is, that the claim has some merit. <u>Martinez</u>, 132 S. Ct. at 1318.

11

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that 1) his counsel's performance was deficient, and 2) the deficient performance prejudiced his defense. <u>Strickland</u>, 466 U.S. at 687. In evaluating counsel's performance, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances." <u>Id.</u> at 688. The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. To establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694.

Against this backdrop, the undersigned turns to petitioner's underlying claims of ineffective assistance of trial counsel to determine whether petitioner has shown them to have some merit.

1. *Ground 1 - Failing to Object to Victim Misidentification*

At the time of trial, one of the victims, identified for purposes of this Memorandum and Order as "Victim 2," was seventy-two years of age. (Resp. Exh. D at 263.) When asked at trial to identify the perpetrator of the crimes, Victim 2 first identified a deputy sheriff but expressed difficulty seeing across the courtroom. Upon being permitted to leave the witness stand to look

more closely, Victim 2 identified petitioner as the perpetrator. (Id. at 284-87.) Victim 2 testified that she was sure of this identification. (Id. at 285.) Trial counsel noted for the record that Victim 2 initially identified a deputy sheriff. (Id.)

Inconsistencies in witness testimony, including inconsistencies in identification testimony, go to the issue of credibility and are to be considered by the jury. Collins v. Dormire, 240 F.3d 724, 728 n.3 (8th Cir. 2001). Although petitioner contends that counsel should have more strongly objected to this identification testimony, he does not state the grounds upon which such an objection would be based. Inasmuch as Victim 2's initial misidentification goes to the credibility of her testimony and not its admissibility, trial counsel was not ineffective for failing to pursue a non-meritorious objection. Dodge v. Robinson, 625 F.3d 1014, 1019 (8th Cir. 2010). See also Storey v. Roper, 603 F.3d 507, 525 (8th Cir. 2010); Burton v. Dormire, 295 F.3d 839, 846 (8th Cir. 2002) (cannot fault counsel for failing to raise issue if no relief could possibly have been obtained); Blankenship v. United States, 159 F.3d 336, 338 (8th Cir. 1998) (no prejudice from counsel's failure to pursue non-meritorious issue); Grubbs v. Delo, 948 F.2d 1459, 1464 (8th Cir. 1991); Meyer v. Sargent, 854 F.2d 1110, 1115-16 (8th Cir. 1988).

2.   *Ground 2 - Failing to Object to Sleeping Juror*

At the conclusion of the evidence, the trial court read the jury instructions to the jury during which time trial counsel

brought to the court's attention that a juror appeared to be nodding off during the instructions. (Resp. Exh. D at 415-16.) The judge indicated that he would "take care of it." (Id. at 416.) The judge then re-read some instructions to clarify the date of the alleged offenses, and then continued to read the remaining instructions to the jury. (Id.) Counsel made no objection or further request regarding the juror in question. During deliberations, the jury had in its possession a copy of the jury instructions which was surrendered to the bailiff upon reaching a verdict. (See id. at 437.)

Nothing in the record demonstrates that the alleged sleeping juror did not hear all of the evidence presented at trial. To the extent the juror appeared to be "nodding off" during the reading of the instructions, trial counsel brought the matter to the court's attention, the court clarified previously read instructions and continued to read additional instructions, and a copy of the written instructions was provided to the jury during its deliberations. In light of these circumstances, petitioner has failed to demonstrate that the jury was incapable of deliberating and reaching a fair verdict. E.g., United States v. Wilcox, 50 F.3d 600, 603 (8th Cir. 1995). Petitioner has thus failed to show that counsel's failure to more strongly object to the sleeping juror resulted in prejudice and, as such, cannot demonstrate that counsel was ineffective.

3. *Ground 3 - Failure to Investigate*

In his third ground for relief, petitioner claims that trial counsel failed to investigate sources so that witnesses could be impeached with inconsistent testimony, inconsistent information in police reports, and inconsistent physical evidence. Petitioner does not identify the "sources" which he now claims counsel should have investigated; nor does he specify the testimony and/or evidence adduced at trial that would have been impeached.

To succeed on a claim that counsel was ineffective for failing to investigate, petitioner may not base his claim on conclusory allegations but rather must allege what information his attorney failed to discover. See Redeemer v. State, 979 S.W.2d 565, 569 (Mo. Ct. App. 1998); see also Sanders v. Trickey, 875 F.2d 205, 210 (8th Cir. 1989) (by offering only speculation that he was prejudiced by counsel's failure to investigate, habeas petitioner fails to show ineffective assistance of counsel). Because petitioner does not identify the information counsel would have discovered from unidentified "sources" or what evidence such information would have impeached, his claim that counsel was ineffective for failing to investigate must fail.

4. *Ground 5 - Inconsistent Defenses*

Petitioner's criminal cause of action involved the attempted rape and forcible sodomy of two victims (Victim 1 and Victim 2). Trial counsel moved to dismiss the case for improper joinder or, in the alternative, moved to sever the counts as they

related to each victim. Prior to the commencement of trial and prior to jury selection, counsel argued to the court that severance was appropriate because, without severance, petitioner would be prejudiced inasmuch as conservative members of the jury may be offended when "hearing about consensual sex with two different women within a relatively short time period[.]" (Resp. Exh. D at 8.) Petitioner contends that such argument ran counter to his theory of defense in that he never claimed consensual sex and in fact did not have any physical contact with Victim 2. A review of the record refutes petitioner's contention that counsel pursued inconsistent theories.

At trial, trial counsel cross-examined Victim 2 regarding her encounter with petitioner and specifically asked whether she and petitioner ever had a consensual sexual relationship, to which Victim 2 testified "Absolutely not." (Resp. Exh. D at 301-02.) Neither Victim 1 nor Victim 2 were further questioned about consensual sexual acts. The interrogating officer testified at trial that upon his apprehension, petitioner made statements that he and Victim 2 had engaged in consensual sexual intercourse on several occasions, including on the date of the alleged offenses. (Id. at 349.) The officer further testified that these statements did not match the evidence. (Id. at 368.) Petitioner testified at trial that Victim 1 was the aggressor during their encounter. Petitioner further testified that no sexual contact occurred between he and Victim 2 on the date of the alleged offenses, but

16

that Victim 2 had permitted and encouraged him to come to her house in the past to engage in sexual activity. (_Id._ at 376-407.) At no time during the presentation of evidence or in arguments to the jury did trial counsel pursue a defense that the alleged sexual encounters on the date of the alleged offenses were consensual. To the extent petitioner claims trial counsel pursued such an inconsistent defense before the jury, the record refutes the claim.

To the extent petitioner argues that trial counsel acted inconsistently with his defense by failing to request a bill of particulars seeking specificity as to the two alleged offenses of attempted rape with respect to Victim 2, petitioner cannot demonstrate prejudice on account of such failure. As noted by the trial court, the jury was instructed as to two distinct offenses as the evidence supported such instruction. (Resp. Exh. D at 374-75). Where, as here, evidence shows that a defendant violated a single statute twice on the same date in the same county and the State charged the defendant with both violations in the same charging document, the charges are not subject to dismissal for insufficiency. State v. Mitchell, 704 S.W.2d 280, 288 (Mo. Ct. App. 1986).

Finally, petitioner claims that testimony adduced from trial counsel at the post-conviction evidentiary hearing — that she thought petitioner's statements were zany, far-fetched or bizarre — shows that counsel's pretrial "frame of mind" was not in his best interest. During the evidentiary hearing, counsel was questioned

as to whether she was concerned about petitioner's mental abilities:

> A. No. He could recount things in a chronological fashion. He could come up with his defense. He could tell me in his words -- some of his stuff was a little zany.
>
> Q. Zany?
>
> A. Zany, interesting. A tad-bit far-fetched, but he was able to tell me his version of events in a way that I could understand them. If I were to ask him questions, he would answer them appropriately for the most part.
>
> Q. But you just testified some of his answers were zany, in your opinion.
>
> A. Well, I thought some of his comments were interesting. Like saying that the old lady essentially ran a porn house. I mean, that's a little bazaar [sic].

(Resp. Exh. I at 24.)

A review of the trial transcript in its entirety shows counsel not to have shared this opinion at trial, either impliedly or expressly, that petitioner's comments were "zany" or "far-fetched." Indeed, counsel's closing argument pursued petitioner's theory of defense that he had an existing relationship with Victim 2 and that Victim 2 wanted to keep the relationship quiet and "on the down low." (Resp. Exh. D at 426.) Counsel also referred to petitioner as Victim 2's "boy toy" and implied that Victim 2 did not want her family to know of their relationship. (Id. at 428-29.) Such argument was consistent with petitioner's own testimony at trial. Inasmuch as counsel's opinion, expressed at the post-conviction

18

evidentiary hearing in October 2008, was not put before the jury at petitioner's trial in August 2006, petitioner cannot demonstrate that he was prejudiced by such opinion.

5.  *Ground 7 – Failure to Object to Statements*

a.) During opening statements, the prosecutor stated that "petitioner was going to have sexual intercourse no matter who, no matter how he had to get it and no matter at what cost." (Resp. Exh. D at 191.) Petitioner contends that this statement was defamatory and misleading and thus that his counsel should have objected.

"The primary purpose of the opening statement is to inform the court and the jury in a general way of the nature of the case, an outline of the anticipated proof and the significance of the evidence as it is presented." State v. Hurst, 612 S.W.2d 846, 853 (Mo. Ct. App. 1981). Because the challenged statement previewed the State's evidence that petitioner sexually assaulted a young woman in an alley and then, shortly afterward, entered the home of a seventy-year-old woman and sexually assaulted her as well, there was nothing improper about the prosecutor's statement to which an objection could have been made and/or sustained. Counsel is not ineffective for failing to make a meritless objection. Dodge, 625 F.3d at 1019; Storey, 603 F.3d at 525; Burton, 295 F.3d at 846; Blankenship, 159 F.3d at 338; Grubbs, 948 F.2d at 1464; Meyer, 854 F.2d at 1115-16.

b.) During jury selection, the prosecutor moved to

19

strike a juror on the basis that the juror indicated during voir dire that she would hold the State to a higher burden of proof than is required by law.[3] Trial counsel did not object to the removal of this juror. (Resp. Exh. D at 148.) There is no error in striking a potential juror when that juror indicates that she would hold the government to a higher burden of proof than the law provides. United States v. Purkey, 428 F.3d 738, 751-52 (8th Cir. 2005). Because there was no basis upon which to object to this juror being stricken for the reason stated, counsel was not ineffective for failing to so object. Dodge, 625 F.3d at 1019; Storey, 603 F.3d at 525; Burton, 295 F.3d at 846; Blankenship, 159 F.3d at 338; Grubbs, 948 F.2d at 1464; Meyer, 854 F.2d at 1115-16.

c.) During opening statement, the prosecutor outlined the testimony anticipated to be elicited from the interrogating officer as to petitioner's statements made to him regarding the offenses in question, and specifically, that he admitted to engaging in consensual sexual acts with Victim 2 and that he admitted to kissing Victim 1 in the alley during which time Victim 1 screamed. (Resp. Exh. D at 198.) Petitioner contends that counsel should have raised a hearsay objection to this portion of the prosecutor's opening statement.

Opening statements should not include facts which are

---

[3]A review of the voir dire transcript shows this juror would require the State to present DNA evidence in a rape case even though the presence of DNA was not a required element of the crime. (See Resp. Exh. D at 112.)

plainly inadmissible. <u>State v. Browner</u>, 587 S.W.2d 948, 952-53 (Mo. Ct. App. 1979). The hearsay rule only prohibits the admission of out-of-court statements offered to prove the truth of the out-of-court declaration. <u>State v. Kelley</u>, 953 S.W.2d 73, 85 (Mo. Ct. App. 1997). The interrogating officer's testimony regarding petitioner's statements was not admitted to prove the truth of petitioner's statements, that is, that the encounter with Victim 2 was consensual and that his encounter with Victim 1 involved only kissing. As such, this testimony was not hearsay. Inasmuch as any hearsay objection by counsel to this statement would have been futile, counsel cannot be said to be ineffective in failing to make such an objection. <u>Dodge</u>, 625 F.3d at 1019; <u>Storey</u>, 603 F.3d at 525; <u>Burton</u>, 295 F.3d at 846; <u>Blankenship</u>, 159 F.3d at 338; <u>Grubbs</u>, 948 F.2d at 1464; <u>Meyer</u>, 854 F.2d at 1115-16.

d.) During jury selection, the prosecutor moved to strike a potential juror for a myriad of reasons, including that the juror did not believe in the judicial system. In response, the court stated, "Well, disbelieving the judicial system is not grounds for removing him. Often I don't myself." (Resp. Exh. D at 147.) Petitioner contends that counsel should have objected to the court's statement inasmuch as it demonstrated the court's lack of trust in its own system and in making professional decisions.

Every act on the part of the trial judge is designed not to prejudice the defendant, but to ensure fairness. <u>United States v. Singer</u>, 785 F.2d 228, 240 (8th Cir. 1986) (citing <u>Rochin v.</u>

California, 342 U.S. 165, 171-72 (1952)).  Petitioner does not argue or demonstrate that the trial judge here conducted his trial in a way that demonstrated bias, distrust in the system, or resulted in an unjust verdict.  A judge's expressions of impatience or dissatisfaction that are within the bounds of what imperfect men sometimes display are not grounds for disqualification.  A judge's ordinary efforts at courtroom administration are immune.  McPherson v. U.S. Physicians Mut. Risk Retention Grp., 99 S.W.3d 462, 487-88 (Mo. Ct. App. 2003) (quoting Liteky v. United States, 510 U.S. 540, 556-56 (1994)).  Because petitioner has failed to demonstrate that the court's benign statement made outside the presence of the jury during jury selection had any effect on the outcome of the trial, petitioner cannot show prejudice on account of counsel's failure to object thereto.

   6.   *Ground 8 - Failure to Object to Closing Argument*

        During the rebuttal portion of closing argument, the prosecutor made statements suggesting that 1) defense counsel's closing argument focused only on the police conduct and failed to address the sex offenses; 2) scratch marks on the petitioner were made by the victims during the assaults; 3) the evidence comported with the officers' account of the circumstances surrounding the shooting of petitioner; and 4) defense counsel's argument regarding an alleged cover up for police misconduct was unreasonable in light of the evidence adduced at trial.  Petitioner contends that trial counsel should have objected to these statements given their

misleading nature.

Viewed in context of the evidence adduced at trial and the argument made by defense counsel, the prosecutor's challenged remarks made during her rebuttal argument were a fair reply to petitioner's closing argument and did not deny petitioner a fair trial. "An advocate is permitted considerable latitude in responding to his opponent's arguments[.]" United States v. Beaman, 361 F.3d 1061, 1065 (8th Cir. 2004); see also United States v. Young, 470 U.S. 1 (1985). Because there was no reasonable likelihood that an objection to the prosecutor's rebuttal argument would have been sustained in these circumstances, counsel cannot be ineffective for failing to make such an objection. Dodge, 625 F.3d at 1019; Storey, 603 F.3d at 525; Burton, 295 F.3d at 846; Blankenship, 159 F.3d at 338; Grubbs, 948 F.2d at 1464; Meyer, 854 F.2d at 1115-16.

Accordingly, because petitioner's underlying claims of ineffective assistance of trial counsel lack merit, such claims are not substantial under Martinez. Therefore, it cannot be said that post-conviction counsel was ineffective for failing to raise these non-meritorious claims in petitioner's amended motion for post-conviction relief. Inasmuch as post-conviction counsel did not render ineffective assistance, petitioner has failed to establish cause to excuse his procedural default of these underlying claims of ineffective assistance of trial counsel. Martinez, 132 S. Ct. at 1318. Where a petitioner fails to demonstrate cause for

default, the Court need not determine whether prejudice has been shown. Cagle, 474 F.3d at 1099; Sherron, 69 F.3d at 289. In addition, inasmuch as petitioner has failed to present evidence that he is actually innocent of the crimes of which he was convicted, he has failed to show that a fundamental miscarriage of justice would occur if the Court were not to consider the merits of the claims.

Therefore, the claims raised in Grounds 1, 2, 3, 5, 7, and 8 of the instant petition are procedurally barred from federal habeas review and should be denied.

## IV. Claims Addressed on the Merits

A review of the record shows petitioner to have properly raised his remaining claims in state court and that the Missouri Court of Appeals, upon review of the merits of the claims, denied petitioner relief. This Court thus turns to the merits of such claims.

"In the habeas setting, a federal court is bound by the AEDPA [Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court decisions." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant habeas relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Williams, 529 U.S. at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13; Jackson v. Norris, 651 F.3d 923, 925 (8th Cir. 2011); Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. Carter, 255 F.3d at 592 (citing Williams, 529 U.S. at 407). "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Id. (quoting Williams, 529 U.S. at 410-11); see also Jackson, 651 F.3d at 925; Broom v. Denney, 659 F.3d 658, 661 (8th Cir. 2011). Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown by clear and convincing evidence that the state court's presumptively

correct factual findings do not enjoy support in the record.  28 U.S.C. § 2254(e)(1); <u>Ryan v. Clarke</u>, 387 F.3d 785, 790 (8th Cir. 2004).

A.  <u>Ground 11 - Violation of Double Jeopardy</u>

Petitioner was convicted of and sentenced on the offense charged in Count X of the Information, Attempted Forcible Rape with respect to Victim 1.  Petitioner was also convicted of and sentenced on the offense charged in Count IX of the Information, Forcible Sodomy with respect to Victim 1.  Petitioner claims that such convictions and resulting sentence violated his right to be free from double jeopardy inasmuch as the conduct that formed the basis for the forcible sodomy in Count IX was the same conduct that formed the basis for the attempted forcible rape in Count X, and that such conduct was insufficient to constitute a "substantial step toward the commission of the offense of forcible rape." Petitioner raised this claim on direct appeal.  (Resp. Exh. A.) Upon review of the merits of the claim, the Missouri Court of Appeals denied petitioner relief.  (Resp. Exh. E.)

At the time petitioner's conviction became final, the law was clearly established that the Double Jeopardy Clause protects against multiple punishments for the same offense.  <u>North Carolina v. Pearce</u>, 395 U.S. 711, 717 (1969).  The Supreme Court has held that a single act may be prosecuted and punished under different statutory provisions if each offense requires proof of an element that the other does not.  <u>Blockburger v. United States</u>, 284 U.S.

299, 304 (1932).

Under Missouri law, sexual acts differing factually in the method of performance have sufficient individual identity to warrant conviction on separate counts.  See State v. Childs, 684 S.W.2d 508, 511 (Mo. Ct. App. 1984); see also State v. Rockett, 87 S.W.3d 398, 406 (Mo. Ct. App. 2002).

> One should not be allowed to take advantage of the fact he has already committed one sexual assault on the victim and thereby be permitted to commit further assaults on the same person with no risk of further punishment for each assault committed.  Each act is a further denigration of the victim's integrity and further danger to the victim.

Childs, 684 S.W.2d at 512 (internal quotation marks and citation omitted).

"Separate convictions may be supported if the evidence sufficiently establishes that each act had an individual identity and further denigrated the victim's integrity."  Rockett, 87 S.W.3d at 407.

Here, the Missouri Court of Appeals determined the evidence adduced at trial to show the petitioner to have committed two separate acts, forming the bases of the separate offenses charged in Counts IX and X of the Information:

> The crime of attempted forcible rape occurs when someone, acting with the purpose to commit forcible rape, takes a substantial step towards penetrating the female sex organ with the male sex organ by means of forcible compulsion. . . .
>
> Here, the evidence shows that Defendant exposed his penis, fondled himself, moved on

top of Victim, held her down, covered her
mouth while she was screaming, pulled up her
skirt, pushed her underwear to the side, and
"clawed" at her vagina and "butt." Defendant
did not stop until a bystander intervened.

. . .

. . . The crime of forcible sodomy occurs
where a person commits any act through the use
of forcible compulsion involving the genitals
of one person and the hand, mouth, tongue or
anus of another person for the purpose of
arousing or gratifying the sexual desire of
any person or for the purpose of terrorizing
the victim. . . .

Here, Defendant committed two sexual
acts: he committed forcible sodomy by
touching [Victim's] genitals with his hand
through the use of forcible compulsion and he
attempted to forcibly rape Victim as discussed
above. By touching Victim's genitals,
Defendant committed a sexual act that had an
individual identity. As a result of this act,
Victim's integrity was further denigrated than
it would have been had Defendant attempted
forcible rape without committing sodomy. . . .

. . . Defendant was not convicted of
attempted forcible rape solely because he
touched Victim's vagina. As explained above,
this act was only one of several facts showing
his intent to commit forcible rape.

(Resp. Exh. E, Memo. at 4, 6-7.) (Internal citations omitted.)

The court of appeals thus determined the evidence to show that

petitioner committed two sexual acts, each having an individual

identity which further denigrated the victim's integrity, thereby

establishing the commission of two separate offenses and justifying

separate convictions. Accordingly, it cannot be said that

petitioner was subject to multiple punishments on the same offense

and therefore subject to double jeopardy. This determination that petitioner's conviction and sentence on Counts IX and X of the Information did not constitute double jeopardy is neither contrary to nor an unreasonable application of clearly established federal law. Nor has petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Petitioner's claim that his right against double jeopardy was violated, therefore, must fail.

To the extent petitioner argues in the instant claim that the evidence was insufficient to support his conviction of Attempted Forcible Rape as set out in Count X of the Information, the Missouri Court of Appeals determined the evidence to support a finding that petitioner's conduct demonstrated a "substantial step" toward the commission of the offense of forcible rape, that is, conduct "'strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.'" (Resp. Exh. E, Memo. at 4 (quoting Mo. Rev. Stat. § 564.011.1).) Specifically, the court of appeals determined that evidence of petitioner fondling his exposed penis and then moving on top of Victim 1, covering her mouth to silence her screams, moving her clothing, and "clawing" at her vagina was sufficient to demonstrate such a substantial step, therefore supporting petitioner's conviction as charged in Count X. (Id. at 4, 5.)

A state appellate court's conclusion that the evidence was sufficient to support a criminal conviction is entitled to great deference by a federal court. Jackson v. Virginia, 443 U.S. 307, 323 (1979). "[W]hether the record contains sufficient evidence to establish each element of the crime beyond a reasonable doubt 'is everyday business for the state courts, grist for their mill, and it will be a rare case in which a federal court on habeas will disagree with them.'" Cassell v. Lockhart, 886 F.2d 178, 179 (8th Cir. 1989) (quoting Moeller v. Attorney Gen. of S.D., 838 F.2d 309, 310 (8th Cir. 1988)).

The court of appeals' determination that there was sufficient evidence to convict petitioner of Attempted Forcible Rape as charged in Count X of the Information is supported by the record and entitled to deference. This Court is unaware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the court's decision runs afoul, nor has petitioner demonstrated such. Therefore, it cannot be said that the state court's determination "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. § 2254(d)(1). Nor has petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Accordingly, the claim raised in Ground 11 of the instant

petition should be denied.  28 U.S.C. § 2254(d).

B.    <u>Ground 12 – Ineffective Assistance of Trial Counsel</u>

        In his final ground for relief, petitioner contends that
trial counsel rendered ineffective assistance by failing to call
him as a witness at the hearing on his motion to suppress and at
trial.  Petitioner also contends that counsel was ineffective by
failing to introduce petitioner's medical records as evidence at
trial.  A review of the record shows petitioner to have raised this
claim in his amended post-conviction motion and on appeal of its
denial.  (Resp. Exhs. F, H.)  Upon review of the merits of the
claims, the Missouri Court of Appeals denied relief.  (Resp. Exh.
J.)

        At the time petitioner's conviction became final, the law
was clearly established that the Sixth Amendment guarantees a
criminal defendant the right to effective assistance of counsel.
<u>Strickland</u>, 466 U.S. at 686.  As discussed <u>supra</u>, to prevail on a
claim of ineffective assistance of counsel, petitioner must show
that his counsel's performance was deficient and that the deficient
performance prejudiced his defense.  <u>Id.</u> at 687.  In evaluating
counsel's performance, the basic inquiry is "whether counsel's
assistance was reasonable considering all the circumstances." <u>Id.</u>
at 688.  To establish prejudice, petitioner "must show that there
is a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different.  A
reasonable probability is a probability sufficient to undermine

confidence in the outcome." Id. at 694.

In addressing the instant claim of ineffective assistance
of trial counsel, the Missouri Court of Appeals summarized the
relevant facts adduced from the evidence of record, and
specifically, that petitioner and the arresting police officers
struggled during petitioner's apprehension, that petitioner was
shot in the shoulder during such struggle, and that petitioner was
then wrestled to the ground and handcuffed. Upon being transported
to the hospital by ambulance, doctors determined petitioner to be
well enough for confinement and petitioner was then transported to
the police department. At the police department, Detective Boney
informed petitioner of his <u>Miranda</u> rights.[4] Upon indicating that
he understood his rights, petitioner made statements to Detective
Boney. At the time he interrogated petitioner, Detective Boney was
aware that petitioner had been shot in the shoulder, suffered a
laceration to his forehead and had scratches on his neck. The
police photographed petitioner to document his injuries, and these
photographs were admitted at trial. Petitioner testified at trial
that the police shot him and hit him in the head with a flashlight
for no reason. (Resp. Exh. J, Memo. at 2-4.)

Petitioner claims that if counsel had presented his
testimony and medical records at the suppression hearing and at
trial, such evidence would have shown that petitioner's injuries
rendered him unable to understand his rights and thus unable to

---

[4]<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

knowingly waive his rights.  The court of appeals determined that, as found by the post-conviction motion court, the record demonstrated otherwise:

> [T]he record of the suppression hearing contained ample evidence of Movant's injuries at the time of his interrogation; thus additional evidence in the form of Movant's testimony and medical records would have added nothing to aid the court in ruling on the motion to suppress. . . .
>
> . . . [A]t trial, the jury had before it substantial and uncontroverted testimony concerning Movant's physical condition at the time he was interrogated[.] . . . Movant's testimony or medical records concerning his injuries would have added nothing to [the] jury's evaluation of the case.

(Resp. Exh. J, Memo. at 7.)

In addition, the court of appeals noted that counsel testified at the post-conviction motion hearing that petitioner did not want to testify at the suppression hearing and never mentioned continuing medical problems due to a head injury.  (Id. at 8.)  The court of appeals also noted that medical records introduced at the post-conviction evidentiary hearing showed petitioner to have complained of pain in his shoulder but not his head; that petitioner did not complain of dizziness, confusion, altered thinking patterns, or slowed motor skills; and that petitioner was observed to rest calmly, awaken easily, have clear speech, move all extremities, and not have any skull fractures.  (Id. at 8-9.)

Applying the Strickland standard for claims of

ineffective assistance of counsel, the court of appeals determined petitioner not to have established that counsel's conduct rendered her assistance ineffective. (Resp. Exh. J, Memo. at 9.) This determination is neither contrary to nor an unreasonable application of clearly established federal law. Nor did this determination result in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). Petitioner indeed testified at trial and recounted his version of the injuries sustained at the time of his apprehension. In addition, the additional evidence and testimony that petitioner avers should have been introduced at the suppression hearing and at trial would have added nothing to petitioner's case inasmuch as other evidence of such matters was already in the record. The failure to present cumulative evidence does not render counsel's assistance ineffective. See Winfield v. Roper, 460 F.3d 1026 (8th Cir. 2006). In addition, the medical records introduced at the post-conviction evidentiary hearing fail to show that petitioner was unable to understand and waive his rights when questioned by Detective Boney as averred by petitioner and, in fact, show otherwise. Petitioner has thus failed to demonstrate that the result of his trial would have been different had counsel introduced such records.

Accordingly, the claim raised in Ground 12 of the instant petition should be denied. 28 U.S.C. § 2254(d).

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that Terry Russell, Warden of the Eastern Reception Diagnostic and Correctional Center, is substituted for Steve Larkins as proper party respondent.

**IT IS FURTHER ORDERED** that Missouri Attorney General Jeremiah "Jay" Nixon is added as a party respondent to the cause.

**IT IS FURTHER ORDERED** that petitioner Anthony G. Moore's petition for writ of habeas corpus (Doc. #1) is dismissed without further proceedings.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue in this cause inasmuch as petitioner has failed to make a substantial showing that he has been denied a constitutional right.

Judgment shall be entered accordingly.

_____

UNITED STATES MAGISTRATE JUDGE

Dated this _13th_ day of August, 2013.